JONI J. JONES (7562)
DAVID N. WOLF (6688)
SCOTT R. RYTHER (5540)
DARIN B. GOFF (11355)
VANESSA R. WALSH (16180)
BRADLEY BLACKHAM (8703)
Assistant Utah Attorneys General
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
jonijones@agutah.gov
dnwolf@agutah.gov
sryther@agutah.gov
dgoff@agutah.gov
vwalsh@agutah.gov
bblackham@agutah.gov

*Attorneys for State Defendant*s

IN THE UNITED STATES DISTRICT COURT

IN AND FOR DISTRICT OF UTAH, CENTRAL DIVISION

| UTAH VAPOR BUSINESS ASSOCIATION, INC., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, *et al.*,<br><br>Defendants | **DEFENDANTS' SUPPLEMENTAL BRIEFING ON POST *BURGER* DECISION*S* AND PRUDENTIAL MOOTNESS**<br><br>Case No. 2:24-CV-00950-HCN-JCB<br><br>Judge David B. Barlow<br><br>Magistrate Judge Jared C. Bennett |
|---|---|

Pursuant to the Court's Order, dated February 13, 2025, Defendants State of Utah, Utah Department of Health and Human Services, Utah State Tax Commission, Spencer J. Cox, Derek E. Brown, and Scott W. Smith (collectively "State Defendants"), respectfully submit the following supplemental briefing as requested by the Court in its Order dated February 13, 2025 (Dkt. 45).

1. **UVBA's Request for Preliminary Injunctive Relief is not Prudentially Moot.**

In the Court's Order of February 13, the Court noted that "there was a bill in legislative committee that would repeal the warrantless inspection program at issue" and that while "the parties briefly addressed their views on this issue [the parties] provided no authority on whether this creates a prudential mootness or related issue."[1] As discussed briefly below, the proposed legislation mentioned during the hearing on Plaintiffs' Motion for Preliminary Injunction has not passed and does not provide a basis for the Court to consider the Motion prudentially moot.

A court may dismiss the case under the prudential-mootness doctrine if the case "'is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the *power* to grant.'" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121-22 (10th Cir. 2010) (emphasis in original; quoting *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997)). "Prudential mootness therefore 'addresses not the *power* to grant relief[,] but the court's *discretion* in the exercise of that power.'" *Jordan v. Sosa,* 654 F.3d 1012, 1024 (10th Cir. 2011) (emphasis in original; quoting *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

Courts have found various cases to be prudentially moot after circumstances changed during the pendency of litigation. *See, e.g., Jordan v. Sosa,* 654 F.3d at 1022-24, 1033-34 (10th Cir. 2011) (holding plaintiff inmate's action for constitutional violations regarding conditions of confinement were prudentially moot when plaintiff was transferred to different correctional facility, altering terms of plaintiff's confinement); *Winzler v. Toyota Motor Sales USA, Inc.,* 681

---

[1] Order for Supplemental Briefing, February 13, 2025, Dkt. 45.

F.3d 1208 (10th Cir. 2012) (holding plaintiff's proposed class action against automobile manufacturer was prudentially moot after relief sought by plaintiff was rendered duplicative when manufacturer undertook national recall under supervision of National Highway Transportation and Safety Administration); and *Los Alamos Study Group v. United States Department of Energy*, 794 F. Supp. 2d 1216, 1226 (D. N.M. 2011) (concluding plaintiff's action challenging the defendant's analysis of potential environmental impacts of a proposed nuclear facility was prudentially moot after new developments arose which required a supplemental environmental impact statement, which constituted circumstances that "'changed since the beginning of litigation that forestall any occasion for meaningful relief.'") (quoting *Southern Utah Wilderness Alliance*, 110 F.3d at 727).

      This is not such a case.  As of the time of filing of this Supplemental Brief, there has been no intervening event that has changed the circumstances underlying UVBA's claims. While there have been two proposed bills introduced during the Utah State Legislature's 2025 Legislative Session that could potentially alter or repeal the inspection program at issue, neither bill has been passed by both the House and the Senate, or been signed into law. Whether either of these bills become law is simply too speculative for the Court to stay its hand.  Accordingly, there is no basis on which UVBA's request for injunctive relief has been mooted at this stage. The 2025 Utah State Legislative Session is scheduled to end on March 7, 2025. Should the Legislature pass new legislation that alters or repeals the inspection program under challenge, counsel will immediately notify the Court and provide an analysis of the effect of the new law on Plaintiffs' claims. But unless and until such a change in circumstances occurs, Defendants do not believe UVBA's claims are prudentially moot.

**2.      S.B. 61's Inspection Program Does Not Violate the Fourth Amendment.**

In its Order for Supplemental Briefing, the Court also directed the parties to address the application of four cases to the question of whether Plaintiffs are likely to prevail on their Fourth Amendment claim.[2]  For the reasons discussed below, *City of Los Angeles v. Patel,* 576 U.S. 409, 135 S.Ct. 2443, 192 L.Ed. 2d 435 (2015); *V-1 Oil Co. v. State of Wyo., Dept. of Environmental Quality*, 902 F.2d 1482 (1990); *S & S Pawn Shop Inc., v. City of Del City*, 947 F.2d 432 (10th Cir. 1991); and *Johnson v. Smith*, 104 F.4th 153 (2024) do not fundamentally alter the *Burger* analysis advocated in Defendants' earlier briefing. Indeed, these authorities support a finding that S.B. 61's administrative inspection provisions do not violate the Fourth Amendment.

**2.1      Warrantless Inspections Are Necessary.**

The second prong of the *Burger* analysis is satisfied "when warrantless inspections are necessary to further the regulatory scheme." *New York v.* Burger, 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).  Admittedly, both *Patel* and *Johnson* impose a burden on the Government to justify warrantless inspections.  In *Patel,* the Court rejected the argument that surprise inspections of records were necessary to prevent falsification of records, holding that, consistent with its own precedents, the advantage of surprise was unnecessary to enforce a recordkeeping requirement. *See Patel,* 576 U.S. at 427 (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978)).

In *Johnson*, the Tenth Circuit interpreted *Patel* to place "the burden on the government to show that *ex parte* warrants cannot adequately catch violations by uncooperative licensees or that the frequency of owners refusing to consent to inspection would make it unfeasible to obtain the

---

[2] *See* Order for Supplemental Briefing, February 13, 2025, Dkt. 45.

number of *ex parte* warrants necessary to deal with such licensees." *Johnson,* 104 F.4th at 177. This burden is met here by operation of Plaintiffs' counsel's judicial admission, in open court, that the warrantless inspection scheme was necessary. During the February 11, 2025 hearing on Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' counsel conceded that warrantless inspections were necessary:

> "MR. HIMONAS: Second is we had argued with respect to the second prong of *Burger* when it came to the search requirement.
>
> THE COURT: Necessity.
>
> MR. HIMONAS: The second prong, that the state didn't meet it. I'm going to concede the argument in that regard. I think part of it is because *Burger* itself noted in the context of that case, as I'm looking at the case, right, that the search requirement was instrumental. So it's hard to argue, I think, counter to *Burger* and the language of *Burger*.
>
> Now, again, I think the third prong carries the day, I don't want the Court to get me wrong. But as the State put it in their briefing, Judge, a law prohibiting the sale of flavored e-cigarettes cannot be effectively enforced without assistant -- without a system for warranty inspection.
>
> Now, I don't do that only out of the goodness of my heart. I think the Court anticipates that that's going to have some significant play when we start talking about severability as well."[3]

A judicial admission is an "express waiver made ... by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592, 133 S.Ct. 1345 (2013) (quoting 9 J. Wigmore, EVIDENCE § 2588 at 821 (Chadbourn rev. 1981)). A judicial admission withdraws "a fact from issue" and dispenses "wholly with the need for proof of the fact." *United States v. Gallegos*, 111 F.4th 1068, 1076 (10th Cir. 2024) (quoting *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th

---

[3] Transcript of Preliminary Injunction Hearing, February 11, 2025 ("TR"), at 14:12-25—15:1-7 (attached as Exhibit 1).

Cir. 2022)). Judicial admissions include statements made in open court "that clearly express the party's decision to formally cede the issue." *Gallegos*, 111 F.4th at 1076.

Plaintiffs' counsel unambiguously agrees that warrantless searches are necessary to enforce the statute— "The second prong, that the state didn't meet it. I'm going to concede the argument in that regard."  Given this clear expression to concede the question of whether warrantless searches of Retail Tobacco Specialty Businesses ("RTSBs") are necessary, Defendants are relieved of any further burden on this prong.

Further, neither *Patel* nor *Johnson* suggest that Plaintiffs are likely to succeed on the merits of their Fourth Amendment claims.  The subject businesses—hotels in *Patel*, and gun dog boarding and training kennels in *Johnson*—were not found to be closely regulated industries and therefore did not fall within the exception outlined in *Burger*.  See *Patel*, 576 U.S. at 424 (distinguishing hotels from liquor sales, firearms dealing, mining, and running a junkyard, stating, "Nothing inherent in the operation of hotels poses a clear and significant risk to the public welfare."); *Johnson*, 104 F. 4th at 174 (holding that "the history of warrantless searches in the industry, the extensiveness of the regulatory scheme, whether other jurisdictions impose similar regulatory schemes, and the inherent danger presented by the industry—do not suggest that the boarding-or training-kennel industry is closely regulated.").  By contrast, post-*Patel* courts considering warrantless searches of tobacco shops have treated this type of enterprise as closely regulated and have also concluded that warrantless searches were necessary.  See *U.S. v. Mansour*, 252 F.Supp.3d 182, 196 (W.D.N.Y. 2017) (a warrant requirement could interfere with the statute's purpose because "Cigarettes are easily concealed, and if the DTF were required to obtain a warrant before conducting a search, in the time it would likely take to do so, unstamped cigarettes could quickly be hidden or destroyed").

In *U.S. v. Hamad*, 809 F.3d 898, 906 n. 5 (7th Cir. 2016), the appellant did not even challenge the district court's conclusion that warrantless searches of tobacco shops were necessary. Any assumption that the government will not be able to demonstrate the necessity of inspecting RTSBs for contraband e-cigarettes ignores the history of similar cases and common sense. The vast weight of precedent holds that warrantless searches of businesses that deal in tobacco and similar products that can rapidly be disseminated through commerce are necessary. *See e.g. U.S. v. Biswell*, 406 U.S. 311, 315-16, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (frequent and unannounced inspections are necessary to ensure firearms are distributed through regular channels in a traceable manner); *Burger*, 482 U.S. at 710 (inspection is necessary because "stolen cars and auto parts often pass quickly through an automobile junkyard" making inspections necessary to detect them."); *S & S Pawn Shop Inc.,* 947 F.2d at 438 ("Stolen property may pass quickly through a pawn shop because items bought by pawnbrokers must be held for only ten days before being sold."). The contraband e-cigarettes banned by S.B. 61 are small and at least as susceptible to rapid illegal distribution as the products at issue in the cases cited.

Defendants finally note the difficulty of applying *Johnson's* requirements at this stage in the proceeding. S.B. 61 has yet to take effect and no searches have taken place under the inspection program. Absent implementation, the State does not know how many RTBS will refuse consent to search, nor can it produce evidence from the practice of enforcing S.B. 61 that violations can be concealed. This requirement may be helpful in deciding the ultimate resolution of Plaintiffs' Fourth Amendment claim, but is not predictive of the outcome on the necessity prong at this stage before the law is in force. Application of *Mansour*, *Hamad*, and as Plaintiffs concede, *Burger,*[4] resolve the issue of necessity.

---

[4] Ex. 1, TR at 14:22.

Finally, as Plaintiffs' counsel suggested when conceding the necessity prong, if the Court were to find that warrantless inspections were not necessary to enforce S.B. 61, the provision is severable.[5]

### 2.2   The Warrantless Search Provisions Are Reasonable in Scope.

The third *Burger* criteria directs that, for a warrantless inspection scheme to align with the Fourth Amendment, "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." *Burger*, 482 U.S. at 702-03. Warrantless inspection schemes satisfy this requirement when the statute advises the business operator "that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* at 703.

In *S & S Pawn Shop Inc.*, 947 F.2d 432 (10th Cir. 1991), the Tenth Circuit addressed a facial challenge to an Oklahoma statute that permitted warrantless inspections of pawn shops. The challenged statute "establishes that the books, records, and property of pawnbrokers licensed by the state may be examined without a warrant. The statute specifies that the chief of police or written designee of the law enforcement body in whose jurisdiction the pawnshop is located may perform the examination. Failure to permit an examination of such books, records, or property constitutes grounds for the suspension or revocation of the pawnbroker's license."[6] *S & S*

---

[5] *See* Dkt. 32, State Defendants' Opposition to Motion for Preliminary Injunction, at 26 n. 59.

[6] Okla Stat. Ann. Tit. 59. § 1508(A) provided: "At such times as the Administrator [of Consumer Affairs] may deem necessary, the Administrator or his duly authorized representative may make an examination of the place of business of each licensee and may inquire into and examine the transactions, books, accounts, papers, correspondence and records of such licensee insofar as they pertain to the business regulated by this act. Such books, accounts, papers, correspondence, records and property taken, purchased or received shall also be open for inspection at any reasonable time to federal law enforcement officials and the chief of police, district attorney,

*Pawnshop, Inc.,* 947 F.2d at 435. Addressing the third *Burger* prong, The Tenth Circuit initially noted "that the Oklahoma statute provides notice to individuals licensed as pawn brokers that they will be subject to warrantless inspections." *Id.* Further "[p]awn brokers are also made aware that the investigations are conducted '[f]or the purpose of discovering violations of [the Oklahoma Pawnshop Act] or of securing information' required by the Act." *Id.* at 438. The Court then rejected the argument that the inspection scheme permitted the inspection of documents unrelated to reported stolen property, noting that the information that pawn brokers are required to record (identifying the pawned property) was "potentially relevant to an investigation of stolen property." *Id.*

The Tenth Circuit next addressed whether the statute provided sufficient notice of the frequency and regularity of the inspections. Turning to *Burger*, the Tenth Circuit noted "the Supreme Court has not required great specificity in this regard." *Id.* Rather, the Tenth Circuit explained, "the absence of a fixed number of inspections for a particular time period was not determinative 'so long as the statute, as a whole, places adequate limits upon the discretion of the inspecting officers.'" *Id.* at 438-39 (quoting *Burger,* 482 U.S. at 711 n. 21). Applying this guidance to the Oklahoma statute which allowed for inspections at a "reasonable time" the Tenth

---

sheriff or written designee of the law enforcement body in whose jurisdiction the pawnshop is located, without any need of judicial writ or other process. In the course of an examination, the Administrator or his duly authorized representative or any authorized peace officer shall have free access to the office, place of business, files, safes and vaults of such licensee, and shall have the right to make copies of any books, accounts, papers, correspondence and records insofar as they pertain to the business regulated by [the Oklahoma Pawnshop Act].... Any licensee who fails or refuses to permit the Administrator or his duly authorized representative or any authorized peace officer to examine or make copies of such books or other relevant documents shall thereby be deemed in violation of this act and such failure or refusal shall constitute grounds for the suspension or revocation of such license."

Circuit concluded that where the statute specified that only pawnshops were subject to the statute, given the statute's specificity as to what could be inspected, *Burger*'s regularity requirement was satisfied.  *See id.* at 439.

Finally, the Tenth Circuit rejected the appellant's argument that the statute failed to limit the discretion of searching officers. Appellant raised the hypothetical that the broad language of the statute permitting searches by virtually any type of law enforcement failed to provide notice of who would conduct the search and opened the door to pawnshop searches by authorities "unconnected with the enforcement of the Oklahoma Pawnshop Act," including military police. *Id.*  Addressing this argument, the court concluded that "a statute allowing the rare search conducted by a military policeman, in our opinion, is not so substantially overbroad to render it unconstitutional on its face."  *Id.* at 440.[7]

The Tenth Circuit similarly addressed the third *Burger* prong in *Johnson*, again holding that the hunting dog boarding and training statute satisfied *Burger's* requirements by specifying: (1) an inspection schedule calling for inspections every three to twenty-four months, with specific intervals within that range based on successfully passing prior inspections; (2) by allowing additional inspections following violations, a complaint, or change of ownership, or failure to renew a license in a timely fashion; (3) by specifying that inspections would take place Monday through Friday between 7:00 AM and 7:00 PM; and (4) by defining the scope of the

---

[7] Although the Tenth Circuit rejected the plaintiff's facial challenge under the Fourth Amendment in *S & S Pawnshop,* it reversed the District Court's grant of summary judgment on the pawnshop owner's Fourth Amendment "as-applied" challenge, noting that the appellant had submitted material facts "demonstrating that the inspections of appellant's business premises were conducted not as part of a pre-planned and dispassionate administrative procedure but instead pursuant to direct criminal suspicion."  *S & S Pawn Shop Inc., 947 F.2d at 441*. The challenge raised in this matter is a facial challenge; the warrantless inspection scheme here has never been implemented, and that challenge fails under the controlling authorities discussed here.

search as authorization to enter the business, examine and make copies of required records, and inspect the premises and animals. *See Johnson,* 104 F.4th at 174, n. 7. This specificity, the court reasoned, provided business owners with sufficient notice that the searches conducted were pursuant to the law and within the proper scope.  Further, the statute limited officer's discretion "at least as much as the search provision that was upheld in *Burger,*[8] which permitted inspections during "regular and usual business hours," and defined the scope of searches to include records and vehicles or vehicle parts on the premises that are subject to record-keeping requirements. *Id.* (quoting *Burger*, 482 U.S. at 711–12).  Further, the court noted the similarity of the inspection scheme to that upheld in *Donovan v Dewey*, 452 U.S. 594, 604, 101 S.Ct. 2534 (1981), explaining that the statute limited discretion by "requiring inspections of all licensees and defining their frequency." *Id.*  Lastly, the court concluded that the statute "is easily distinguishable from the inspection provision that was struck down in *Patel*, which required hotels to make their records available to any police officer for inspection on demand without imposing any limit on the officers' discretion regarding when or how frequently those inspections could occur." *Id.* (citing *Patel*, 576 U.S. at 412, 135 S.Ct. 2443).

  The warrantless inspection scheme in S.B. 61 satisfies the third *Burger* prong.  It unquestionably gives notice to RTSBs that they will be subject to warrantless inspections.  Utah Code § 26A-1-131(1)(a).  It specifies that the purpose of the statute is to determine compliance. *Id.*  While the statute does not specify whether any inspections will occur, it does limit the inspections to regular business hours and mandates a follow-up if violations are found.  *See* Utah

---

[8] The inspection scheme upheld in *Burger* did not specify an inspection interval or schedule. Instead, the challenged ordinance provided for searches "[u]pon request of an agent of the commissioner or of any police officer." 482 U.S. at 694, n. 1, 107 S. Ct. at 2639.

Code § 26A-1-131(1)(b)-(c). The statute also limits the discretion of the inspecting officers by defining the place and scope of the search to places where illegal contraband e-cigarettes are likely to be concealed once S.B. 61 is in effect, *i.e.,* the RTSB's premises, desks, safes, vaults, fixtures and furniture.[9]

Plaintiffs complain that their e-cigarette products are primarily stored in plain view, but their evidence explains the practice of RTSBs in an environment where flavored e-cigarettes are legal and do nothing to inform the Court as to where illegal contraband e-cigarettes will be stored after S.B. 61 goes into effect. Defendants assume, not unreasonably, that illegal contraband, subject to confiscation under the statute, will not be on prominent display. Utah Code § 26A-1-131(1)(b). In this regard, the searches authorized by S.B. 61 do not meaningfully differ in scope from the searches of "the office, place of business, files, safes and vaults" of a pawn shop that were found constitutionally sound in *S & S Pawn Shop.* 947 F.2d at 435, n. 3. Finally, S.B. 61 does not present the circumstance that troubled the court in *S & S Pawn Shop Inc.,* (and *Patel*)— searches by virtually unlimited law enforcement personnel. 947 F.2d at 440; *Patel*, 576 U.S. at 427. S.B. 61 specifically delegates the authority to conduct the warrantless searches to the local health department, and no one else. *See* Utah Code § 26(a)(1)-(b).

The *Patel* and *V-1 Oil Co.* decisions do not counsel a different result. In *Patel* the Supreme Court held that a provision directing a hotel guest record "shall be made available to any officer of the Los Angeles Police Department for inspection" failed *Burger's* "certainty and regularity prong." 576 U.S. at 413, 427. The Los Angeles ordinance, the Court reasoned, "fails sufficiently to constraint police officer's discretion as to which hotels to search and under what

---

[9] Plaintiffs' own affidavits concede that inventory is stored in these places. *See* Dkt. 12-5, Declaration of Kyle Bertagnolli ¶¶ 16-19 at 6.

circumstances." *Id.* While *Dewey* upheld a scheme that called for four searches a year and *Burger* required searches "on a regular basis" the Court noted, the challenged hotel record ordinance "imposes no comparable standard." *Id.* at 427-428. *Patel,* however, should not be read to require a defined number of searches or an inspection schedule. The phrase *Patel* quotes from *Burger* is simply the Court's own characterization that the inspection scheme "informs the operator of a vehicle dismantling business that inspections will be made on a regular basis." *Burger*, 482 U.S. at 711. The actual inspection scheme upheld in *Burger* did not specify an inspection interval or schedule. Instead, the challenged ordinance provided for searches "[u]pon request of an agent of the commissioner or of any police officer" during regular business hours. 482 U.S. at 694, n. 1, 107 S. Ct. at 2639. Further, as noted in *Johnson*, the ordinance in *Patel* directed the hoteliers to provide their guest books to any Los Angeles police officer upon demand, without any constraints on the officer's discretion as to when or how frequently the searches could occur. *Johnson*, 104 F.4th 174 n.7 (citing *Patel,* 576 U.S. at 412). S.B. 61, by contrast, constrains searches to ordinary business hours, with a follow-up inspection after a found violation. Further, these searches are to be performed only by local health departments. S.B. 61's provisions satisfy constitutional requirements that aim to protect "against devolv[ing] almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search." *Patel*, 576 U.S. at 439 (Scalia dissenting) (citing *Marshall v. Barlow's Inc*., 436 U.S.307, 323, 98 S.Ct. 1816, 56 L.Ed.2d 305).

  *V-1 Oil Co.* addresses the application of the closely regulated business exception to a law of general application. See *V-1 Oil Co.,* 902 F.2d at 1484. The appellant in *V-1 Oil Co.* sued the Wyoming Department of Environmental Quality and a Department agent after the agent entered the appellant's property without a warrant for the purpose of obtaining soil samples to test for

groundwater contamination. *See id.* The Department and the agent defended, arguing the search was authorized by provisions of the Wyoming Environmental Quality Act which provided that Department agents were authorized to:

> [E]nter and inspect any property, premise or place, except private residences, on or at which an air, water or land pollution source is located or is being constructed or installed.... Persons so designated may ... inspect any monitoring equipment or method of operation required to be maintained pursuant to this act ... for the purpose of investigating actual or potential sources of air, water or land pollution and for determining compliance or noncompliance with this act...."

*Id.* (quoting Wyo. Stat. § 35–11–109(a)(vi) (1988)).

The Court rejected this argument first explaining that, "because the Act applies to *every business* in Wyoming, it provides no notice whatsoever to the owner of any particular business that his or her property will be subject to warrantless inspections." *Id.* at 1487 (emphasis added). "Administrative searches," the court continued, "conducted pursuant to statutes of general applicability require search warrants." *Id.* (citations omitted). The Court further explained that the statute failed to provide assurances of regularity of inspections. *Id.* (citations omitted). Rather, "the Wyoming Environmental Quality Act leaves inspectors free to inspect any business as often or seldom as he or she pleases. A warrant is required if searches are 'so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials.'" *Id.* (quoting *Donovan v. Dewey,* 452 U.S. 594, 599, 101 S.Ct. 2534, 2538, 96 L.Ed.2d 601 (1987)).

In contrast to the statute in *V-1 Oil Co.,* S.B. 61 is not a law of general applicability. It applies only to RTSBs, and as discussed above gives clear notice to RTSBs that their property will be subject to warrantless searches. Further, unlike Wyoming's Environmental Quality Act,

S.B. 61 authorizes regular searches during specific times. The searches contemplated by S.B. 61 are not random, infrequent, or unpredictable to owners of RTSBs. RTSBs, as owners of closely regulated businesses, cannot be said to have no real expectation that their property will be inspected.

## CONCLUSION

There has been no change of circumstances that should lead this Court to conclude that UBVA's Motion for Preliminary Injunctive Relief is prudentially moot.

Regarding UVBA's Fourth Amendment challenge to S.B. 61's inspection program, RTSBs are closely regulated businesses that sell small, easily concealed, and easily transported products that will be illegal if S.B. 61 takes effect. RTSB owners are well aware that their property will be periodically inspected to ensure compliance with laws regulating the sale of e-cigarettes. The warrantless inspection program is necessary to ensure compliance with the statute and for enforcement of the statute to be effective. Further, the warrantless inspection scheme is an adequate substitute for a warrant—it advises the RTSB owner that inspections are made pursuant to the law and limits the discretion of the inspecting authority to business hours and to places within the premises where contraband e-cigarettes are likely to be found. As such, the inspection scheme is constitutional, and Plaintiffs' Motion for a Preliminary Injunction should be denied.

RESPECTFULLY SUBMITTED THIS 27th day of February, 2025.

                OFFICE OF THE UTAH ATTORNEY GENERAL

                */s/ Scott R. Ryther*
                JONI J. JONES
                DAVID N. WOLF
                SCOTT R. RYTHER
                DARIN B. GOFF
                VANESSA R. WALSH
                BRADLEY BLACKHAM
                Assistant Utah Attorneys General
                *Attorneys for State Defendants*

## CERTIFICATE OF SERVICE

I certify that on February 27, 2025, I electronically filed the foregoing, *Defendants' Supplemental Briefing on Post Burger Decisions and Prudential Mootness*, using the Court's electronic filing system, which gave notice to the following:

Deno G. Himonas (05483)
W. Bradford Barber (18601)
WILSON SONSINI GOODRICH & ROSATI
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, Utah 84101
dhimonas@wsgr.com
bbarber@wsgr.com
*Attorneys for Plaintiffs*

Trinity Jordan (15875)
Jordan E. Westgate (16098)
DENTONS DURHAM JONES PINEGAR, P.C.
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111
trinity.jordan@dentons.com
jordan.westgate@dentons.com
*Attorneys for Plaintiffs*

Walter A. Romney, Jr. (07975)
Katherine E. Pepin (16925)
CLYDE SNOW & SESSIONS
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
war@clydesnow.com
kep@clydesnow.com
*Attorneys for Plaintiffs*

Phillip W. Dyer (4315)
Benjamin R. Dyer (13691)
DYER LAW GROUP PLLC
The Langton House
648 East 100 South
Salt Lake City, Utah 84102
phil@dyerlawgroup.com
ben@dyerlawgroup.com
*Attorneys for Plaintiffs*

William G. Garbina
Anneliese Booher
Tim Bywater
wgarbina@saltlakecounty.gov
abooher@saltlakecounty.gov
tbywater@saltlakecounty.gov
*Attorneys for County Defendants*

*/s/ Lily Egginton*
LILY EGGINTON
Legal Secretary