# EXHIBIT 1

```
 1                  UNITED STATES DISTRICT COURT

 2                       DISTRICT OF UTAH

 3                            -o0o-

 4

 5  UTAH VAPOR BUSINESS          )
    ASSOCIATION, INC., a Utah    )
 6  nonprofit corporation; and   )
    THE SMOKE HOUSE, LLC,        )
 7                               )   Case No. 2:24-cv-00950-DBB
          Plaintiffs,            )
 8                               )     ***PARTIAL TRANSCRIPT***
    v.                           )
 9                               )
    STATE OF UTAH, et al.,       )
10                               )
          Defendants.            )
11  _____)

12

13

14            BEFORE THE HONORABLE DAVID BARLOW

15                            ---

16              Tuesday, February 11, 2025

17                 1:02 p.m. to 3:01 p.m.

18       Motion for Temporary Restraining Order and

19                   Preliminary Injunction

20                            ---

21

22

23

24  Reported by:  Michelle Mallonee, RPR, CCR   (801) 209-4979
    351 S. West Temple, #7.130, Salt Lake City, Utah 84101
25

                                                              1
```

```
 1                         APPEARANCES

 2

 3  For Plaintiffs Utah Vapor Business Association and
    The Smoke House, LLC:
 4
            DENO G. HIMONAS, ESQ.
 5          WILLIAM BRADFORD BARBER, ESQ.
            WILSON SONSINI GOODRICH & ROSATI
 6          15 W. South Temple, Suite 1700
            Salt Lake City, Utah 84101
 7          (801) 401-8510
            dhimonas@wsgr.com
 8          bbarber@wsgr.com

 9          BENJAMIN R. DYER, ESQ.
            DYER LAW GROUP PLLC
10          261 East 300 South, Suite 200
            Salt Lake City, Utah 84111
11          (801) 363-5000
            ben@dyerlawgroup.com
12

13          TRINITY S. JORDAN, ESQ.
            JORDAN E. WESTGATE, ESQ.
14          DENTONS DURHAM JONES & PINEGAR, P.C.
            111 South Main Street, Suite 2400
15          Salt Lake City, Utah 84110
            (801) 415-3000
16          trinity.jordan@dentons.com
            jordan.westgate@dentons.com
17

18          WALTER A. ROMNEY, JR., ESQ.
            KATHERINE E. PEPIN, ESQ.
19          CLYDE SNOW & SESSIONS, PC
            One Utah Center
20          201 South Main Street, Suite 2200
            Salt Lake City, Utah 84111
21          (801) 322-2516
            war@clydesnow.com
22          kep@clydesnow.com

23

24

25
                                                              2
```

```
 1   For Defendant State of Utah, et al.:

 2           SCOTT R. RYTHER, ESQ.
             VANESSA R. WALSH, ESQ.
 3           DAVID N. WOLF, ESQ.
             UTAH ATTORNEY GENERAL'S OFFICE
 4           160 East 300 South, 6th Floor
             Salt Lake City, Utah 84114
 5           (801) 366-0353
             sryther@agutah.gov
 6           vwalsh@agutah.gov
             dnwolf@agutah.gov
 7

 8                       * * *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                3
```

```
 1            Tuesday, February 11, 2025; Salt Lake City, Utah
 2                              1:02 p.m.
 3                               -o0o-
 4           THE COURT:  Good afternoon.  We are convened in
 5   Case No. 2:24-cv-950, the Utah Vapor Business Association,
 6   et al., versus the State of Utah, et al.
 7           Would counsel for the plaintiffs please state
 8   their appearance.
 9           MR. HIMONAS:  On behalf of the Vapor Association,
10   Your Honor, Deno Himonas and Brad Barber from Wilson
11   Sonsini.  And with the Court's indulgence, I'll allow
12   co-counsel to introduce themselves.
13           THE COURT:  Thank you, Mr. Himonas.
14           MR. DYER:  Benjamin Dyer.
15           MR. ROMNEY:  I'm Walter Romney, and also in the
16   gallery is Katherine Pepin.
17           MR. JORDAN:  Trinity Jordan and Jordan Westgate
18   with Dentons.
19           THE COURT:  Thank you.
20           Counsel for the defendants?
21           MR. RYTHER:  Thank you, Your Honor.  I'm Scott
22   Ryther.  I'm here representing the State of Utah.  I'm with
23   my colleague, Vanessa Walsh.
24           THE COURT:  Thank you, Counsel.
25           All right.  We're convened today for purposes of a
```

1  hearing on the plaintiffs' motion for a preliminary
2  injunction.  And the only question that I have before we get
3  started is whether there are any preliminary matters that
4  the parties anticipate before we have the plaintiffs begin
5  with their oral argument.
6           MR. HIMONAS:  May I approach, Your Honor?
7           THE COURT:  Of course.
8           MR. HIMONAS:  It's a rather unorthodox request,
9  Your Honor, but I think it important to bring to this
10 Court's attention that currently pending before the Utah
11 legislature are two bills, one bill to seek to correct the
12 admittedly overbroad investigatory search and
13 subpoena/warrantless search provisions of the legislation,
14 and a second to completely repeal the ban.
15          We've approached the State about extending this
16 TRO for the purpose, for 30 days or so, to allow this
17 legislation to play out.  And I would invite the Court,
18 frankly, to -- that did not go well.  Let me back up for a
19 second.
20          The State didn't accept it.  I would invite the
21 Court to have counsel continue those discussions.  I do not
22 understand why we're going to go through this process,
23 indulge in the Court's resources, writing, and what it's
24 going to take, and find out in 30 days that the law has
25 changed.

```
 1             It's also critically important, because if the
 2   Court allows me, what I'm going to tell the Court is that
 3   within a month of this ban taking place, 50 percent of the
 4   RTSBs will be out of business, so that it's not something
 5   that will be easily fixed.
 6             I think the prudent thing -- this Court has a
 7   great deal of discretion.  I think the prudent thing to do
 8   is to let the next 30 days play out, and then let's have
 9   this hearing when we know what the actual playing field is
10   and we're not guessing what the legislation looks like.
11             THE COURT:  Okay.  Thank you for that,
12   Mr. Himonas.  So a quick question for you before I turn to
13   the defendants to hear their response.
14             If I'm understanding you correctly, there are
15   currently pending before the Utah legislature two bills,
16   each of which, were they passed, would end up mooting in
17   their entirety the flavor vape sales ban and the warrantless
18   inspection program that are the subjects of plaintiffs'
19   motion for preliminary injunction.
20             MR. HIMONAS:  Small correction.  One would moot it
21   in its entirety, and the other one would significantly
22   impact the arguments on both sides.
23             THE COURT:  Okay.
24             MR. HIMONAS:  Depending on whether it passed or
25   didn't pass.
```

1           THE COURT:  So one would be fully moot, and then
2    the second argument is essentially we have a moving target,
3    potentially, that we -- we may be convened yet again in a
4    short period of time.
5           MR. HIMONAS:  And not on a small issue, but on the
6    warrantless search issue.
7           THE COURT:  Okay.  Thank you for that.  Appreciate
8    it, Mr. Himonas.
9           Counsel for the defendants, what about this
10   mootness and moving target issue?
11          MR. RYTHER:  Thank you, Your Honor.  There are two
12   bills, as counsel states, working their way through
13   committee in the legislature.  Our understanding as of now
14   is that neither of those bills has made it out of committee.
15   So at this point, it would be pretty speculative to assume
16   that either bill is going to be passed or signed into law.
17          One of the bills, it's true, if it were passed and
18   signed into law, would repeal the flavor ban, as I
19   understand it.  But that hasn't even come out of committee,
20   as we understand it.
21          And the same is true of another bill that would
22   modify the administrative inspection powers of the local
23   health departments.  That one, too, is not out of committee.
24   So it's quite speculative at this point, Your Honor, to say
25   whether either of those bills will become law.

1           So the State's position is that there is no basis
2  on which injunctive relief should be issued here.  There
3  hasn't been -- you know, as Mr. Himonas represented to the
4  Court, 50 percent of the vape -- these RTSBs, as he states,
5  will be out of business within some period of time.
6           Your Honor, the record here just doesn't show
7  that.  They haven't made that kind of a showing.  I'll get
8  to this later, but for him to make that assertion, there's
9  just nothing in the record that really supports that
10 assertion.  So I suppose the representation of exigency here
11 and that we ought to delay this hearing seems it would be
12 based on speculation at this point.  There's just no reason
13 that we can assume that either one of those bills is going
14 to become law at this point.
15           THE COURT:  I see.  Thank you, Counsel.
16           MR. HIMONAS:  May I, Your Honor --
17           THE COURT:  Of course.
18           MR. HIMONAS:  -- respond?
19           So first of all, my sincere apologies for not
20 thanking the Court for the time that you've already taken to
21 prepare and for being here.
22           THE COURT:  Not at all.
23           MR. HIMONAS:  No, apologies are necessary.
24           With respect to the bills, let me just point out,
25 if the bill with respect to changing the law with respect to

8

1  search and seizure doesn't come out of committee, that, in
2  itself, is very important because, as the Court notes,
3  they've made a severability argument.  It will tell us it's
4  not severable in many ways as a practical matter, that they
5  have no intention of changing that legislation.  One.
6           Two, the bill on the ban got a fiscal note today,
7  Your Honor.
8           Three, both bills will be in front of committee on
9  Thursday.  It is not speculative that these bills are coming
10 out of committee, that these bills are going to get a vote.
11 With all due respect to the State, they're coming up.  It's
12 a hot issue.  There's no reason we should be here.
13          I will engage in terms of the irreparable harm and
14 the 50 percent argument.  This isn't the time or place.  It
15 will be during argument, if that's where we get.
16          But I would say, again, with these two pieces of
17 litigation -- excuse me, legislation where they are in the
18 hopper and in the process, there is no reason for us to
19 be -- there is no exigency that is requiring us to go
20 forward and do this all over again 30 days from now when we
21 have a different playing field.
22          It may be we lose, Your Honor.  It may be we have
23 to withdraw our preliminary injunction, depending on what
24 happens with the legislation.  It may be the State backs off
25 and says there's no ban.

9

```
 1              The Court should husband its resources and its
 2   jurisdiction.  I urge the Court to do so wisely.
 3              THE COURT:  Okay.  Thank you, Mr. Himonas.
 4              So Counsel, I'll give both sides here my
 5   preliminary thoughts on this issue.
 6              I wasn't expecting to have something of this
 7   legislative magnitude be brought into the hearing today.
 8   It's a curious situation in which we find ourselves with
 9   some pending legislation that may, sounds like, fairly
10   dramatically affect what it is that we are talking about
11   today.
12              But I'm going to back up to the procedural posture
13   in which we find ourselves, which is this lawsuit was filed
14   in December originally in state court, removed by the
15   defendants to federal court, and then we had a motion for
16   TRO.  Obviously, that was filed earlier in the state case,
17   and then the federal motion for TRO and PI filed here before
18   the federal court on December 23rd.  And the parties had a
19   chance to talk amongst themselves and decided that it would
20   be appropriate for a TRO to be issued so that the parties
21   and the Court would have a sufficient amount of time to be
22   prepared on these issues and then to hear and decide them.
23              And so we have a TRO in place, really because the
24   parties have agreed to it, not because the Court itself has
25   made any particular determinations.  And I note that,
```

10

1  because I don't think it would be appropriate for me to --
2  at least my initial instinct is it would not be appropriate
3  for me to unilaterally extend this TRO at this point if the
4  parties are not unified in that position, because it is,
5  after all, the parties' agreement that caused the TRO to
6  issue.
7           So I think I should hear your arguments today on
8  the merits.  If you have anything more that you'd like to
9  say about that legislative posture and the mootness and sort
10 of -- I guess the moving target argument might be a type of
11 quasi-legislative ripeness issue, however you wish to
12 characterize it and discuss it.  If you have more you want
13 to say about it, do in your oral argument.  But let's hear
14 what you have to say today, and then perhaps you'll end up
15 telling me a few days from now or something like that that
16 something has changed.
17          So Mr. Himonas?
18          MR. HIMONAS:  Thank you, Your Honor.  There is one
19 other option.  I think the Court's analysis is exactly
20 right, that without the State's concession, that's where we
21 are.
22          But the item that the Court may have skipped over
23 is, the Court has the ability to extend a TRO based on what
24 it hears.  So it may not be necessary.  Because it's a
25 motion for a TRO and PI, the Court doesn't necessarily have

11

```
 1  to.  And the showing for a TRO, while the same, I think we
 2  would all acknowledge, in practice, it may not be the least
 3  prudent thing in the world if the Court were to say, at the
 4  end of the day after the Court has heard argument, if it's
 5  convinced that a TRO may be more appropriate than a PI.  And
 6  I may be arguing against my own interest in that regard.
 7            But I hope in my role today to play that of the
 8  reliable tour guide.  I will tell the Court where I think I
 9  have problems, and I'll tell the Court where I think I'm
10  right.  In this regard, you know, I said it, I may be
11  arguing against my own best interests, but there's a lot of
12  discretion that you have in these matters, Your Honor.  I
13  need not tell you that.  And that's a potential option that
14  the Court may want to consider.
15            THE COURT:  Thank you, Mr. Himonas.
16            MR. HIMONAS:  Well, I anticipate that my
17  argument -- I am not -- we are not going to share the
18  argument.  I'm anticipating my argument will go about an
19  hour.  I've not timed that.
20            THE COURT:  We are not going to time it, either,
21  Mr. Himonas, so...
22            MR. HIMONAS:  Well, I'm not looking at you, Judge.
23  I'm looking at the people who have to hear me speak.  And at
24  times, as the Court may know, I speak at the speed of light.
25  Yes.  So if the Court needs a break, if counsel needs a
```

1  break at any time, just let me know.
2              THE COURT: Very good.
3              MR. HIMONAS: May it please the Court, I'm not
4  telling you anything new when I tell you that there are
5  four -- four elements to a preliminary injunction -- to a
6  TRO or a preliminary injunction: Irreparable harm, balance
7  of harms, that it's not adverse to the public interest, and
8  substantial likelihood of success.
9              With respect to the substantial likelihood of
10 success prong, Your Honor, I want to bring the Court's
11 attention to two concessions that I need to make early on.
12 The first is with respect to the *Edina* cite at 48 -- we
13 cited it at 483, it's actually 482 F.Supp. 3d 875, out of
14 the District of Minnesota. That case, frankly, went our way
15 on tobacco products standard. That case was overruled by
16 the Eighth Circuit.
17             Here's the catch: It's not red-flagged on Westlaw
18 or on Lexis. So it was in our preparation for hearings
19 today -- and neither did the State. For obvious reasons,
20 nobody picked it up. But I think it's incumbent on me to
21 let the Court know that we've discovered that in the
22 process. Now, it doesn't make any difference to the
23 ultimate outcome here, but I'd still like to tell the Court.
24             THE COURT: Thank you, Mr. Himonas. I'll stop you
25 there and indicate I appreciate your faithful adherence to

13

1  the duty of candor.  And I'll let you know that we had
2  already discovered that the Eighth Circuit had come to a
3  different determination on the tobacco product standard than
4  the district court used.  But it affirmed the overall
5  judgment, the result was the same, and it wasn't
6  red-flagged, as you've identified, so --
7             MR. HIMONAS:  Yeah, and it was -- so my sincere
8  apologies we didn't catch it until then.  And I'm going to
9  rip off just a mean letter to Westlaw and Lexis on your
10 behalf, Judge, to let them know you're very unhappy with
11 them.  No.
12            Second is, we had argued with respect to the
13 second prong of *Burger* when it came to the search
14 requirement that the State --
15            THE COURT:  Necessity.
16            MR. HIMONAS:  The second prong, that the State
17 didn't meet it.  I'm going to concede the argument in that
18 regard.  And I think part of it is because *Burger* itself
19 noted in the context of that case, as I'm looking at the
20 case, right, that the search requirement was instrumental.
21 So it's hard to argue, I think, counter to *Burger* and the
22 language of *Burger*.
23            Now, again, I think the third prong carries the
24 day, so I don't want the Court to get me wrong.  But as the
25 State put it in their briefing, Judge, a law prohibiting the

14

1  sale of flavored e-cigarettes cannot be effectively enforced
2  without assistance -- without a system for warrantless
3  inspection.
4      Now, I don't do that only out of the goodness of
5  my heart.  I think the Court anticipates that that's going
6  to have some significant play when we start talking about
7  severability as well.
8      In terms of the roadmap, I'm going to take an
9  atypical approach.  I'm going to start with the public
10 interest, then move to balance of harms and irreparable
11 harms, and end with likelihood of success.
12     And I'm starting with the public interest, despite
13 the fact that it's almost always a throwaway, to be candid,
14 in these cases, that the State has painted with a
15 particularly pejorative brush.  And I don't blame them.  If
16 I were in their position and it involved tobacco or anything
17 of the sort, insurance companies, you name it, we're all
18 used to it, that's the flavor we get, hoping to, not inflame
19 the Court, but perhaps to rise passions.
20    (Further proceedings were heard and reported, but not
21 transcribed.)

15

```
 1                    COURT REPORTER'S CERTIFICATE

 2


 3   State of Utah         )
                            ss.
 4   County of Salt Lake   )

 5              I, Michelle Mallonee, a Registered Professional
     Reporter in and for the State of Utah, do hereby certify:
 6
                That the proceedings of said matter was
 7   reported by me in stenotype and thereafter transcribed into
     typewritten form;
 8
                That the same constitutes a true and correct
 9   transcription of said proceedings so taken and transcribed;

10              I further certify that I am not of kin or
     otherwise associated with any of the parties of said cause
11   of action, and that I am not interested in the event
     thereof.
12
                WITNESS MY HAND at Salt Lake City, Utah, this
13   21st day of February 2025.

14

15

16
                              _____
17                            Michelle Mallonee, RPR, CCR
                              Utah CCR #267114-7801
18                            Expires May 31, 2026

19

20

21

22

23

24

25
                                                              16
```