THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UTAH VAPOR BUSINESS ASSOCIATION INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, *et al.*,<br><br>Defendants. | **ORDER GRANTING IN PART [ECF NO. 12] MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case No. 2:24-cv-00950-DBB-JCB<br><br>Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Plaintiffs Utah Vapor Business Association ("UVBA") and The Smoke House (together "Plaintiffs") seek an injunction preventing the State of Utah, Governor Spencer Cox, Attorney General Derek Brown, Utah Department of Health and Human Services, and others (collectively "Defendants") from enforcing Utah's Electronic Cigarette Amendments.[1] For the reasons stated below, their motion is granted in part.

## BACKGROUND

Plaintiffs are retail tobacco specialty businesses ("RTSBs") that challenge Utah's Electronic Cigarette Amendments (the "Act").[2] The Act, passed by the Utah State Legislature and signed into law in March 2024, amended several sections of the Utah Code and enacted new provisions to regulate the sale of electronic cigarettes ("e-cigarettes"). Plaintiffs sought an

---

[1] Motion for Temporary Restraining Order and Preliminary Injunction ("Mot."), ECF No. 12, filed Dec. 23, 2024. Plaintiffs have dismissed Salt Lake County Health Department and Dorothy Adams as defendants since filing their motion. *See* ECF No. 40, Notice from the Court, filed Jan. 30, 2025.
[2] Electronic Cigarette Amendments, 2024 Utah Laws Ch. 470 (S.B. 61).

injunction to prevent the Act's warrantless inspection program and ban on the sale of flavored electronic cigarettes from going into effect.[3]

The Electronic Cigarette Registry Enforcement provision (the "Inspection Program") permits local health departments to "examine the books, papers, and records" of electronic cigarette retailers to determine their compliance with the Act.[4] Local health departments are instructed to "make the inspections and examinations at any time during ordinary business hours, and may inspect the premises and all desks, safes, vaults, and other fixtures or furniture contained in or upon the premises" to determine if any unregistered electronic cigarettes are present.[5]

The Act was scheduled to go into effect on January 1, 2025.[6] Plaintiffs filed a motion for temporary restraining order, preliminary or permanent injunction, and declaratory order to halt the Act's implementation in Utah state court,[7] and Defendants removed the case to federal court.[8] Plaintiffs then filed their Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") in this court.[9] On December 24, 2024, the parties stipulated to the entry of a temporary restraining order prohibiting Defendants from enforcing the Act until the court issued a ruling on Plaintiffs' motion for a preliminary injunction,[10] which the court granted.[11]

---

[3] Mot. 2.
[4] Utah Code Ann. § 26A-1-131 (1)(a).
[5] Utah Code Ann. § 26A-1-131 (1)(b).
[6] Utah Code Ann. § 59-14-810 (7)(a).
[7] Complaint, ECF No. 1-2, filed Dec. 19, 2024.
[8] Notice of Removal, ECF No. 1, filed Dec. 19, 2024.
[9] Mot. 1.
[10] Stipulated Motion for Entry of Order Granting Temporary Restraining Order, ECF No. 14, filed Dec. 24, 2024.
[11] Order Granting Stipulated Motion for Entry of Order Granting Temporary Restraining Order, ECF No. 20, filed Dec. 30, 2024.

After a hearing, the court entered an order denying the preliminary injunction regarding the Act's Flavor Sales Ban provision.[12] The court also ordered the parties to submit additional briefing on the Act's Inspection Program,[13] which the parties completed on March 6, 2025.[14]

## STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule."[15] "A preliminary injunction has the 'limited purpose' of 'preserv[ing] the relative positions of the parties until a trial on the merits can be held.'"[16] It is "never awarded as of right" and may only be granted "when monetary or other traditional legal remedies are inadequate, and 'the right to relief is clear and unequivocal.'"[17]

"Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking a preliminary injunction must show: '(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'"[18]

---

[12] Order Denying in Part Motion for Temporary Restraining Order and Injunction, ECF No. 44, filed Feb. 13, 2025.
[13] Docket Text Order, ECF No. 45, filed Feb. 13, 2025. The court also ordered briefing on whether changes to the Act pending in the Utah Legislature raised any mootness issues. *Id.* Both parties argued that the issues are not moot, and the Utah Legislative session has since ended without the Legislature making any changes to the Act. Therefore, the court addresses the Inspection Program.
[14] Supplemental Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Pl. Supp. Brief"), ECF No. 49, filed Feb. 27, 2025; Defendants' Supplemental Briefing on Post *Burger* Decisions and Prudential Mootness ("Def. Supp. Brief"), ECF No. 50, filed Feb. 27, 2025; Reply in Support of Supplemental Brief ("Pl. Supp. Reply"), ECF No. 51, filed Mar. 6, 2025; State Defendants' Supplemental Briefing Reply ("Def. Supp. Reply"), ECF No. 52, filed Mar. 6, 2025.
[15] *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019)).
[16] *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269 (10th Cir. 2018) (quoting *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005)).
[17] *Id.* (quoting *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)) (also quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).
[18] *First W. Cap. Mgmt. Co.*, 874 F.3d at 1141 (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

## DISCUSSION

### I. Likelihood of Success

Plaintiffs argue that the Inspection Program should be enjoined because it violates the Fourth Amendment. Defendants respond that the Inspection Program is sufficiently limited and does not infringe on Plaintiffs' constitutional rights.

"It is clear beyond question that the Fourth Amendment freedom from unreasonable searches and seizures extends to business premises as well as residential premises."[19] However, the "expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home."[20] And that expectation of privacy is not the same for all businesses: "Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements . . . have lessened in this context."[21]

To obtain an injunction of the Inspection Program, Plaintiffs must demonstrate that it likely fails the three-part test set forth by the Supreme Court in *New York v. Burger*, which states that "[w]arrantless inspections of closely regulated businesses are reasonable only if the following three criteria are met: (1) '[T]here must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made'; (2) 'the warrantless inspections must be necessary to further the regulatory scheme'; and (3) 'the statute's inspection program, in terms of the certainty and regularity of its application, must provide a

---

[19] *United States v. Wilcox*, No. 2:13-CR-717 TS, 2015 WL 2365563, at *3 (D. Utah 2015) (quoting § 11.3(d) Business premises, 6 Search & Seizure § 11.3(d) (6th ed.)).
[20] *United States v. Anderson*, 154 F.3d 1225, 1229 (10th Cir. 1998) (quoting *United States v. Leary*, 846 F.2d 592, 597 n.6 (10th Cir. 1988)) (cleaned up).
[21] *New York v. Burger*, 482 U.S. 691, 702 (1987) (citing *O'Connor v. Ortega*, 480 U.S. 709, 741 (1987)) (also citing *New Jersey v. T.L.O.*, 469 U.S. 325, 355 (1985)).

constitutionally adequate substitute for a warrant.'"[22] Plaintiffs do not dispute that they are closely regulated businesses or that the inspection program meets the first and second *Burger* prongs. However, Plaintiffs argue that the Inspection Program should be enjoined because it does not provide a constitutionally adequate substitute for a warrant.

"For an inspection program to satisfy the third requirement, the law 'must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.'"[23] "To perform this first function, the statute must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'"[24]

Here, the Inspection Program provision states in relevant part that:

> (1)(a) A local health department may examine the books, papers, and records of a retailer in this state, for the purpose of determining compliance with Section 59-14-810.
> (b) A local health department may make the inspections and examinations at any time during ordinary business hours, and may inspect the premises and all desks, safes, vaults, and other fixtures and furniture contained in or upon the premises for the purpose of ascertaining whether an electronic cigarette product is held or possessed in violation of Section 59-14-810.[25]

Plaintiffs challenge the Inspection Program's certainty and regularity, arguing that the Act is unconstitutional because it does not state how frequently RTSBs will be searched.[26]

---

[22] *Johnson v. Smith*, 104 F.4th 153, 164 (10th Cir. 2024) (quoting *Burger*, 482 U.S. at 702–03).
[23] *Id.* at 174 n.7 (quoting *Burger*, 482 U.S. at 703).
[24] *Burger*, 482 U.S. at 703 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)).
[25] Utah Code Ann. § 26A-1-131 (1)(a)-(b).
[26] The court does not reach Plaintiffs' arguments about the scope of the Inspection Program, as its failure to provide certainty and regularity is a sufficient basis to enjoin the program.

Defendants respond that inspections are reasonably limited to business hours and provide a time frame for follow-up inspections after a violation, so the Act is constitutional.[27]

In *Donovan v. Dewey*, the Supreme Court considered the constitutionality of the warrantless inspections required by the Federal Mine Safety and Health Act.[28] The Court noted that "the Act requires inspection of *all* mines and specifically defines the frequency of inspection."[29] It also remarked that the Act required inspection of "all surface mines at least twice annually and all underground mines at least four times annually."[30] As a result, the Act itself "clearly notifies the operator that inspections will be performed on a regular basis."[31]

Later, the Court in *New York v. Burger* upheld a law authorizing warrantless inspection of automobile salvage yards. It found that the statute in question provided a "constitutionally adequate substitute for a warrant."[32] In part, this was because the "statute informs the operator of a vehicle dismantling business that inspections will be made on a regular basis."[33] The statute in *Burger* limited such inspections and examinations to "regular and usual business hours."[34] The Court noted that the statute did not limit the number of searches during a given period of time, but found "[w]hile such limitations, or the absence thereof, are a factor in an analysis of a particular statute, they are not determinative so long as the statute, as a whole, places adequate limits upon the discretion of inspecting officers."[35]

---

[27] State Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction 29 ("Opp."), ECF No. 32, filed Jan. 17, 2021.
[28] 452 U.S. 594, 603–504 (1981).
[29] *Id*. (emphasis in original).
[30] *Id*.
[31] *Id.* at 605.
[32] *New York v. Burger*, 482 U.S. 691, 711 (1987).
[33] *Id.*
[34] *Id.*
[35] *Id.* at 711 n.21.

In its most recent relevant case, *City of Los Angeles v. Patel*, the Supreme Court found that a municipal ordinance permitting officers to inspect hotel records was invalid.[36] The Court found that hotels were not a closely regulated industry, so an administrative warrantless inspection was not proper without an opportunity for precompliance review.[37] Alternatively, assuming hotels were closely regulated, the Court found the ordinance did not satisfy the *Burger* criteria. Relevant here, the Court found:

> [The ordinance] is also constitutionally deficient under the 'certainty and regularity' prong of the closely regulated industries test because it fails to sufficiently constrain police officers' discretion as to which hotels to search and under what circumstances. While the Court has upheld inspection schemes of closely regulated industries that called for searches at least four times a year . . . or on a regular basis, [the Ordinance] imposes no comparable requirement.[38]

For those reasons, the Court found the statute invalid.

The Tenth Circuit also has addressed the certainty and regularity requirement for warrantless searches. In *V-1 Oil Co. v. State of Wyoming*, the court considered a warrantless search provision that authorized officers to "enter and inspect any property, premise or place, except private residences."[39] The court found this provision was not an adequate substitute for a warrant for two reasons. First, it applied to every business in the state, so it provided "no notice whatsoever to the owner of any particular business that his or her property will be subject to warrantless inspections."[40] Second, the provision provided no assurance of regularity of inspection because it "leaves inspectors free to inspect any business as often or seldom as he or

---

[36] 576 U.S. 409 (2015).
[37] *Id.* at 423.
[38] *Id.* at 427–28 (internal citations omitted).
[39] 902 F.2d 1482, 1484 (10th Cir. 1990) (quoting Wyo.Stat. § 35–11–109(a)(vi) (1988)).
[40] *Id.* at 1487.

she pleases."[41] The Tenth Circuit also cited with approval an out-of-circuit case finding that to "satisfy the 'certainty and regularity' requirement, an 'inspection program must define clearly. . . the frequency of such searches.'"[42]

One year after its opinion in *V-1*, the Tenth Circuit decided *S & S Pawn Shop, Inc. v. City of Del City*. In *S & S*, the court considered an Oklahoma provision allowing officers to search the "books, records, and property" of licensed pawnbrokers without a warrant.[43] The court distinguished this statute from the Wyoming statute in *V-1*, as the Oklahoma statute provided certain kinds of businesses with notice that they would be subject to warrantless inspections.[44] The statute also made pawnbrokers aware that inspections were done to discover violations of the Oklahoma Pawnshop Act.[45] As for any timing requirements, the court compared the statute to *Burger*, reasoning that

> Although appellant argues that the statute fails to notify pawnbrokers of the frequency of inspections, the Supreme Court has not required great specificity in this regard. In *Burger*, the Court noted that the absence of a fixed number of inspections for a particular time period was not determinative "so long as the statute considered as a whole, placed adequate limits upon the discretion of the inspecting officers." The inspection program at issue in *Burger* stated that inspections were allowed only "'during [the] regular and usual business hours.'" The Oklahoma statute requires that inspections occur only at a "reasonable time." Although standing alone this language could be interpreted broadly, in light of the restraints contained elsewhere in the inspection scheme which stipulate that only pawnshops are subject to such a search and what may be properly inspected, given the limits approved in *Burger* we do not find that this unusually broad language renders the statute unconstitutional.[46]

---

[41] *Id.*
[42] *Id.* (quoting *Serpas v. Schmidt,* 827 F.2d 23, 29 (7th Cir.1987)).
[43] *S & S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 435 (10th Cir. 1991).
[44] *Id.* at 438.
[45] *Id.*
[46] *Id.* at 438–39 (internal citations omitted).

Finally, the Tenth Circuit's most recent relevant decision came last year in *Johnson v. Smith*.[47] There, the court considered the dismissal of a claim challenging the validity of a Kansas administrative inspection program involving animal training or boarding kennels. The court set forth in detail the Supreme Court jurisprudence on warrantless inspections ending with the *Patel* decision. The court then turned to the challenged statute, finding that the record did not suggest that the industry was closely regulated, though further factual development on remand might show otherwise. Like *Patel*, it then went on to consider the *Burger* criteria nevertheless.

Relevant here, the Tenth Circuit discussed the need for the program to "limit the discretion of the inspecting officers."[48] The court noted that the challenged regulations "provide that an inspection 'shall' be conducted every 15 to 24 months if the premises passed its three most recent inspections; every 9 to 18 months if it passed its two most recent inspections; and every 3 to 12 months if it failed either of its two most recent inspections."[49] The Tenth Circuit then observed that "[d]espite Plaintiffs' argument that the government's own handbook shows that inspectors' discretion is not at all limited, the handbook gives them discretion only to choose when to conduct an inspection within the intervals set forth [by the law]."[50] The court compared the inspection provision to the one in *Dewey*, which "limits inspectors' discretion by requiring inspections of all licensees and defines their frequency."[51] And the court found it was distinguishable from *Patel*, where there was no limit on "officers' discretion regarding when or how frequently those inspections could occur."[52]

---

[47] 104 F.4th 153 (10th Cir. 2024).
[48] *Id.* at 174 fn. 7 (quoting *New York v. Burger*, 482 U.S. 691, 703 (1987)).
[49] *Id.* (citing K.A.R. § 9-18-9(b)).
[50] *Id.*
[51] *Id.* (citing *Donovan v. Dewey*, 452 U.S. 594, 604 (1981)).
[52] *Id.* (citing *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 412 (2015)).

Turning to the case at bar, Utah's Inspection Program has a number of similarities and differences from the laws considered in the foregoing cases. As noted earlier, there is no dispute that Plaintiffs are members of a closely regulated industry. Plaintiffs also have ceded the necessity requirement, so the only issue is the certainty and regularity of application requirement. There is no dispute that the law informs RTSBs that it applies to them. Nor is there any concern about the law informing the RTSBs why the searches are conducted: they are "for the purpose of determining compliance with Section 59-14-810."[53] Instead, the core question is whether the law limits "the discretion of the inspectors." It does as to the time of the inspection, which can only occur "during ordinary business hours." But that is seemingly the sole restriction aside from scope.

To begin with, the Inspection Program *authorizes* inspections, but it does not *require* them. The "local health department may examine . . . and may inspect the premises" of the RTSBs, but it is not required to do so.[54] On whether any inspections at all certainly will occur, the statute is silent. The Inspection Program also does not make it clear whether all RTSBs will be inspected or just the ones the inspectors choose. Additionally, the Inspection Program says nothing about the frequency of any such inspections. It does not say that they are to occur on a temporal basis, like annually or quarterly. It does not even say that they are to occur regularly. It simply says they "may" occur. In short, the Inspection Program seemingly leaves it in inspectors' hands entirely as to whether any inspections occur, which RTSBs will be inspected, and how

---

[53] Utah Code Ann. § 26A-1-131 (1)(a).
[54] *Id.*

frequently any particular RTSB might be inspected (except after a violation is found, where a follow up time frame is prescribed). This is nearly unlimited discretion, except as to time of day.

To be sure, the statutes considered by the Supreme Court and the Tenth Circuit, and how those statues were viewed, have varied significantly on the certainty and regularity factor. *Burger* found it enough that the law indicates that inspections "will be made on a regular basis."[55] *S & S*, decided shortly after and applying *Burger*, noted that the Supreme Court had "not required great specificity" on the certainty and regularity requirement.[56] Both of those decisions upheld an "ordinary and usual business hours" limitation like the one in the Inspection Program. But other cases emphasized statutory language that did more than limit the time of day an inspection could occur. *Donovan v. Dewey* considered language requiring "inspection of *all* mines and specifically defin[ing] the frequency of inspection."[57] In contrast, here inspections only "may" occur, and the Inspection program does not require "all" RTSBs to be inspected, much less on a regular basis or at some identified interval. Also, while *V-1* involved a statute that applied to "every business," as opposed to just the RTSBs here, the statute also was found violative because it left inspectors free to inspect "as often or seldom as he or she pleases."[58] The Inspection Program grants similar discretion.

Finally, the most recent decisions from the Supreme Court and from the Tenth Circuit suggest the Inspection Program likely fails the certainty and regularity factor. *Patel* found constitutionally deficient an inspection law in part because it failed to limit discretion as "to which hotels to search," noting that the law in question failed to include either a frequency

---

[55] *New York v. Burger*, 482 U.S. 691, 711 (1987).
[56] *S & S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 435 (10th Cir. 1991).
[57] 452 U.S. 594, 604 (1981).
[58] *V-1 Oil Co. v. State of Wyo., Dep't of Env't Quality*, 902 F.2d 1482, 1487 (10th Cir. 1990).

interval or "regular basis" requirement that the Court had previously upheld.[59] Here, the Inspection Program lacks either a frequency or regular basis requirement, leaving it to the health department to decide whether to inspect at all and without any direction on how often to do so. And while *Johnson v. Smith* did not turn on the certainty and regularity factor, it noted that inspections were required, applied to all licensees, and had a defined frequency.[60] None of these observations appear to be present in this case.

In sum, the Inspection Program appears unlikely to meet the constitutional standard. It appropriately limits the time of day inspections may occur but provides no other limitation on inspectors' discretion. Inspectors apparently are left free to decide whether to inspect all, some, or none of the RTSBs. Similarly, inspectors are entirely unfettered in their ability to inspect any particular RTSB as little or as much as they like. They are not required to inspect regularly, on any other defined interval, or under any particular set of circumstances. This nearly unlimited discretion likely violates the certainty and regularity requirements, particularly under the most recent binding decisions. Accordingly, Plaintiffs have demonstrated that they are substantially likely to succeed on their Fourth Amendment challenge to the Inspection Program.[61]

## II. Irreparable Harm

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."[62] This is "not an easy burden to fulfill"[63] and the

---

[59] *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 427 (2015).
[60] 104 F.4th 153, 174 fn. 7 (10th Cir. 2024).
[61] As a result, the court does not consider the parties' additional scope arguments and the arguments about whether the Inspection Program violates the Utah Constitution.
[62] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)).
[63] *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269 (10th Cir. 2018) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

12

movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."[64] Plaintiffs argue that the Inspection Program authorizes unconstitutional searches and seizures, establishing irreparable harm.[65] Defendants respond that Plaintiffs unreasonably delayed seeking injunctive relief and that any alleged constitutional injury is "speculative."[66]

"[A] party requesting a preliminary injunction must generally show reasonable diligence."[67] "As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."[68] An "unnecessary and unexplained delay in seeking equitable relief undermines [Plaintiffs'] claim that they will suffer irreparable harm but for expedited preliminary relief."[69] "However, delay is but one factor in the irreparable harm analysis."[70] "The question instead is whether the delay was reasonable, was not a decision by the party to 'sit on its rights,' and did not prejudice the opposing party."[71]

Defendants argue that Plaintiffs' delay was unreasonable because the Act was signed into law in March 2024 and Plaintiffs did not request injunctive relief until December 2024, shortly

---

[64] *Id.* (quoting *First W. Cap. Mgmt. Co.*, 874 F.3d at 1141).
[65] Mot. 51.
[66] Opp. 7, 10.
[67] *Benisek v. Lamone*, 585 U.S. 155, 159 (2018).
[68] *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) (quoting *New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs*, 838 F. Supp. 881, 928 (D.N.J. 1993)).
[69] *Are You Listening Yet Pac v. Henderson*, No. 2:24-CV-00104-JNP, 2024 WL 1051984, at *10 (D. Utah 2024) (waiting to seek injunctive relief until one week prior to signature gathering deadline was an "unnecessary and unexplained delay."); *see also Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1270 (D. Utah 2023) (two year delay in seeking injunctive relief undercut plaintiff's argument that "he urgently needs that relief to avoid a likely, imminent, and irreparable harm.").
[70] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (citing *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984)) (eight year delay in seeking injunctive relief for trademark infringement showed lack of irreparable harm); (also citing *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1221 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005) ("Plaintiffs' delay in seeking an injunction undermines their argument that they will suffer irreparable harm if an injunction does not issue.").
[71] *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (citing *RoDa Drilling Co.* 552 F.3d at 1211–12).

before the law was set to go into effect.[72] According to Defendants, this delay was unreasonable because the Act was clear in March, yet Plaintiffs waited nine months to challenge it.[73]

Plaintiffs respond that the speed they took in bringing this action was reasonable because they were unsure how Utah DHHS and local health departments would implement the Act. Plaintiffs argue they did not know how the Act would be enforced until August 6, 2024, when Utah DHHS informed RTSBs that the Act would be effective on January 1, 2025, and that they acted promptly after receiving this information.[74]

Based on these facts, it does not seem that the delay by Plaintiffs was so unreasonable that the court should not consider the merits of their motion. Plaintiffs sought to enjoin the Act before it went into effect, and Defendants do not explain how any delay has prejudiced them. Moreover, Plaintiffs' delay in seeking injunctive relief is not dispositive. Accordingly, the court turns to Plaintiffs' arguments on how they will be irreparably harmed by the Inspection Program.

"The deprivation, or threat of deprivation, of a constitutional right is sufficient, standing alone, to constitute irreparable injury."[75] "What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of constitutional rights fits that bill."[76] However, the "party seeking injunctive relief must show that

---

[72] Opp. 8. Plaintiffs first sought injunctive relief in state court on December 12, 2024. *See* State Court Filings 67, ECF No. 1-2, filed Dec. 19, 2024.
[73] Opp. 8.
[74] Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction 3 ("Reply"), ECF No. 38, filed Jan. 29, 2025.
[75] *Herrera v. Santa Fe Pub. Sch.*, 792 F. Supp. 2d 1174, 1182 (D.N.M. 2011) (citing *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)) (granting temporary restraining order to prevent possible unconstitutional search or seizure); *see also Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").
[76] *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)) (also citing *Adams By & Through Adams v. Baker*, 919 F. Supp. 1496, 1504–05 (D. Kan. 1996)).

14

the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."[77] "Purely speculative harm will not suffice."[78]

Plaintiffs have alleged that the Act's Inspection Program subjects them to "an imminent threat that their commercial premises will be subject to unconstitutional searches."[79] There is a substantial likelihood that one or more Plaintiffs will be subjected to an unconstitutional search if the Inspection Program is left in place, as the Program authorizes local health departments to make warrantless inspections at any interval at their discretion. The injury caused by the Inspection Program is not speculative, as health departments could begin making inspections immediately. Therefore, Plaintiffs have established that they likely will be irreparably harmed if the Inspection Program goes into effect.[80]

### III. Balance of Harms and Public Interest

Finally, Plaintiffs must demonstrate "that the balance of equities tips in their favor, and that the injunction is in the public interest" to obtain injunctive relief. These "factors 'merge' when, like here, the government is the opposing party."[81] "A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights."[82] "When a constitutional right hangs in the balance. . . 'even a temporary

---

[77] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) (emphasis in original).
[78] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).
[79] Mot. 51.
[80] Because the likely violation of a constitutional right is sufficient here, the court does not consider the parties' irreparable harm arguments based on financial injury.
[81] *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)) *abrogated on other grounds by Garland v. Cargill*, 602 U.S. 406 (2024).
[82] *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) (citing *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)).

loss' usually trumps any harm to the defendant."[83] And it is "always in the public interest to prevent the violation of a party's constitutional rights."[84]

Plaintiffs have demonstrated that there is a substantial likelihood that the Inspection Program violates the Fourth Amendment. The harm that Plaintiffs will suffer if they are subjected to an unconstitutional search outweighs any interest Defendants have in making these searches; accordingly, the balance of harms factor favors Plaintiffs.

Next, enjoining the Inspection Program is in the public interest, which favors preventing the violation of constitutional rights. Defendants argue that Plaintiffs' harm is outweighed by the public's interest in reducing youth e-cigarette use.[85] But the interest in reducing youth e-cigarette use does not outweigh the protection of constitutional rights.[86] Moreover, the Act's Flavor Sales Ban and other provisions aimed at reducing youth e-cigarette consumption may remain in place without the Inspection Program. Accordingly, Plaintiffs have established that both the balance of harms and public interest favor enjoining the Inspection Program.

### IV. Severability

Plaintiffs argue that the entire Act should be enjoined because the Inspection Program violates the Fourth Amendment and the Act contains no severability provision.[87] Defendants

---

[83] *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019) (quoting 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.)).
[84] *Id.* at 807 (quoting *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126, 1134 (D. Colo. 2017)).
[85] Opp. 16.
[86] *Free the Nipple-Fort Collins*, 916 F.3d at 806 (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)) ("But when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh [plaintiff's] in having his constitutional rights protected.")
[87] Mot. 38. The court does not consider any severability arguments made in the parties' supplemental briefing, as it goes beyond the scope of the court's supplemental briefing order, and no party sought leave to address the issue further.

respond that the Act is operable and achieves the Utah Legislature's primary purpose of reducing youth e-cigarette use without the Inspection Program, so it can be severed.[88]

"[W]hen reviewing the construction of statutes, '[t]he general rule is that statutes, where possible, are to be construed so as to sustain their constitutionality.'"[89] "Accordingly, if a portion of the statute might be saved by severing the part that is unconstitutional, such should be done."[90] To determine whether or not a statutory subsection is severable, courts look to legislative intent.[91] If "the legislature would have intended to enact the statute with the stricken provision severed" the remaining portions of the statute can stand alone.[92] When, as in this case, the statute does not have a severability provision or if the legislature's intent is not expressly stated, the court must "turn to the statute itself, and examine the remaining constitutional portion of the statute in relation to the stricken portion. If the remainder of the statute is operable and still furthers the intended legislative purpose, the statute will be allowed to stand."[93]

It is undisputed that the purpose of the Act is to reduce youth use of electronic cigarette products.[94] The Act still furthers this purpose without the Inspection Program, as the sales ban on flavored electronic cigarettes and product registry will make it more difficult for children to access flavored electronic cigarettes. These provisions are operable without the Inspection Program, as they provide a comprehensive program for regulating electronic cigarettes and

---

[88] Opp. 26–27.
[89] *Vega v. Jordan Valley Med. Ctr., LP*, 2019 UT 35, ¶ 17, 449 P.3d 31, 36 (quoting *Gallivan v. Walker*, 2002 UT 89, ¶ 87, 54 P.3d 1069).
[90] *State v. Lopes*, 1999 UT 24, ¶ 18, 980 P.2d 191, 196 (quoting *Celebrity Club Inc. v. Utah Liquor Control Comm'n*, 657 P.2d 1293, 1299 (Utah 1982)).
[91] *Vega v. Jordan Valley Med. Ctr., LP*, 2019 UT 35, ¶ 17 (quoting *Gallivan*, 2002 UT 89, ¶ 88, 54 P.3d 1069).
[92] *Id.* (*see also Berry By & Through Berry v. Beech Aircraft Corp*., 717 P.2d 670, 686 (Utah 1985)).
[93] *Id.* (quoting *Midvale City. Corp. v. Haltom*, 2003 UT 26, ¶ 54, 73 P.3d 334).
[94] Mot. 11 ("The Utah Legislature's intended purpose of SB 61 is to curb youth e-cigarette use.").

punishing retailers that sell banned products.[95] These provisions also strongly suggest that the Utah Legislature likely would have passed the Act without the Inspection Program. The Inspection Program adds an additional enforcement approach to those presently existing, but the Legislature likely would have passed the Flavor Sales Ban and other restrictions on electronic cigarettes without this specific enforcement mechanism. While injunction against the Inspection Program precludes warrantless searches, it does not prevent the State from using other enforcement means, including undercover operations and ex parte warrants. Additionally, the very existence of the Flavor Ban likely will decrease sales—indeed, Plaintiffs argued both that they have been highly compliant with prior restrictions and that the banned products constitute about "89 percent of Plaintiffs' business."[96] For all of these reasons, it is clear that the Act is operable and will still further legislative purposes even without the Inspection Program. Accordingly, the Inspection Program is severable from the rest of the Act.

In sum, Plaintiffs have met their burden to obtain a preliminary injunction of the Inspection Program, which is severable from the rest of the Act. Accordingly, only the Inspection Program is enjoined.

## ORDER

Plaintiffs' Motion for Preliminary Injunction on the Inspection Program is GRANTED.[97]

---

[95] Utah Code Ann. § 59-14-810 (8)(a); Utah Code Ann. § 76-10-113 (4).
[96] *See e.g.*, Mot. 7, 52.
[97] ECF No. 12.

Signed March 24, 2025.

BY THE COURT

_____
David Barlow
United States District Judge